Plaintiff sued on open account and provoked issuance of a writ of attachment under which was seized defendant's truck and trailer, which he had been using in hauling poles, logs and piling to earn a livelihood for himself and family. To obtain the order for the writ, plaintiff alleged: "That petitioner is informed and verily believes that the defendant is about leaving permanently the State, without there being a possibility, in the ordinary course of judicial proceedings, of obtaining or executing judgment against him previous to his departure, and that a writ of attachment is necessary to protect petitioner in the premises."
These allegations track Par. 1 of Article 240 of the Code of Practice.
Defendant moved to dissolve the writ on the ground that the allegations therefor were and are untrue in that he was not "about to permanently leave the State". He sued for damages caused him by the allegedly illegal issuance and execution of the writ, including attorney's fee of $100 for services of his attorney in filing, trying and prosecuting the motion to final judgment. Defendant also alleged in the motion to dissolve that the attached property is exempt from seizure in this case as it is the "tool and instrument of his trade and profession", by which he earns a living for himself and family. He did not answer the merits of the suit and judgment by default entered against him was confirmed at same time judgment overruling the motion and maintaining the attachment was rendered. Defendant appealed suspensively.
Defendant has a wife and two small children and lives with them in the Town of Coushatta, Red River Parish, Louisiana, near which his father and mother have lived since 1933. He served honorably for several years in the United States army, including service during World War No. Two, and was finally discharged on April 19, 1946, with rank of captain. After returning to his home he purchased, partially on credit, two trucks and trailers and engaged in hauling logs, poles and piling as a livelihood. He disposed of one of these vehicles some time prior to the filing of this suit. This venture, it appears has not been successful financially. He became involved in debt and was being pressed for payment by his creditors nearly all of whom live in or about Coushatta. He owed several hundred dollars on the purchase price of the attached truck. Faced with these embarrassing circumstances, he turned his thoughts to re-entering the army as a means of paying his financial obligations, and made known to quite a number of friends and others the fact that he was considering doing so; in fact, it was no secret at all. He visited the recruiting office in Shreveport and discussed with the army officer there his tentative determination to return to the service, with special reference to the rank he would be given should he do so. He was promised that his wishes would be transmitted to the proper authority and he be advised as soon as word was received from him. Defendant also took some steps looking to a sale of the truck and trailer, from the proceeds of which he intended, so far as it would go, to satisfy his creditors. While matters were in the related condition, the attachment herein was sued out.
Defendant testified that after the issuance of the attachment he abandoned the purpose of enlisting in the army but in oral argument and brief, plaintiff's counsel stated that after bonding the truck defendant sold it and then enlisted in the army and is now therein. However, in view of the conclusions we have reached, this is entirely unimportant to a correct decision of the case.
[1] To justify issuance of the attachment plaintiff depends entirely upon the *Page 24 
undisputed and generally announced fact that defendant contemplated re-enlisting in the army, and argues that this attitude on his part constituted "about leaving permanently the State". We are certain this premise is wholly without foundation in law. By enlisting in the military service of his country a citizen does not necessarily forfeit or abandon the residence and domicile he enjoyed at time of enlistment, unless the contrary is clearly expressed or is disclosed from circumstances. Revised Civil Code, Articles Nos. 43, 44, 45 and 46.
It clearly appears herein that defendant had no intention of abandoning his home and domicile in Coushatta; in fact, he made it known to the recruiting officer that he desired, if possible, to be stationed at Barksdale Field, which is not over 40 miles from Coushatta, and is within the State of Louisiana. He had arranged with a merchant in Coushatta to sell to his wife the necessary groceries, etc. on which she and the children could subsist until his financial condition improved by his earnings in the service. This arrangement was to be effective, of course, in the event he did enter the military service. During the period of the related facts, defendant and family lived in a rented house and it was their intention to continue to live therein should defendant re-enlist. A domiciliary service on him there, even though he were absent, due to service in the army, would be valid.
[2, 3] It is certain temporary absence from the State or the purpose on the part of a debtor to leave the State temporarily does not warrant the harsh remedy against him afforded by attachment. If this were not true, a debtor, for any valid reason, would risk business destruction by going beyond the bounds of his state, even temporarily. To warrant attachment for the cause alleged upon herein, the intention to be absent permanently must exist and be clearly proven on trial. Absence from the State temporarily for personal or business reasons does not warrant a creditor to resort to attachment in order to collect or attempt to collect what is due him by his debtor.
[4] We are clear in the opinion that the existing facts did not warrant the issuance of the writ of attachment in this case. If the law were otherwise it could serve to deter enlistment in the military service of the Government by any citizen who is so unfortunate as to be in debt.
[5, 6] Defendant has not proven definitely that he has sustained loss because of the issuance and levy of the writ of attachment, other than the fee of his counsel, in the amount of $100, which he is obligated to pay. In view of the circumstances of the case and the character and extent of services rendered by counsel to procure dissolution of the writ of attachment, we consider said fee reasonable.
For the reasons herein given, the judgment appealed from insofar as it maintains the writ of attachment, is annulled, avoided and reversed; and there is now judgment in favor of defendant, dissolving and annulling said writ and the seizure thereunder. It is further ordered, adjudged and decreed that defendant, John T. Simpson, have and recover judgment against plaintiff, Davis Marston, in the sum of $100, as attorney's fee herein; that the cost of issuance and execution of the writ and those incurred by this appeal be paid by plaintiff. In all other respects the judgment appealed from is affirmed. *Page 25